AO 106 (Rev. 04/10) Application for a Search Warrant

AUTHORIZED AND APPROVED/DATE: jason harley-6-6-24

# UNITED STATES DISTRICT COURT
for the
Western District of Oklahoma

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

a white Apple iPhone, IMEI: 354820297446125, S/N#: G30CR3L2RL

Case No. M-24-496-SM

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the __Western District__ District of __Oklahoma__, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 846 | Drug Conspiracy |
| 21 U.S.C. § 841 | Possession with Intent to Distribute Cocaine |

The application is based on these facts:

See affidavit of FBI SA Marc Jones.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

MARC JONES, SPECIAL AGENT, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: June 6, 2024

*Judge's signature*

City and state: Oklahoma City, Oklahoma

SUZANNE MITCHELL, U.S. Magistrate Judge
*Printed name and title*

WESTERN DISTRICT OF OKLAHOMA
OKLAHOMA CITY, OKLAHOMA

STATE OF OKLAHOMA      )
                       )
COUNTY OF OKLAHOMA     )

## AFFIDAVIT

I, Marc Jones, Special Agent with the Federal Bureau of Investigation (FBI), having been duly sworn, depose and state as follows:

1. I have been a Special Agent with the FBI since April 2021. I am currently assigned to the Oklahoma City Division, where I am assigned to the Criminal Enterprise Squad, which is responsible for investigating street gang and drug-related offenses. Since becoming a Special Agent, I have been trained in a variety of investigative matters which involved the unlawful distribution of narcotics in violation of 21 U.S.C. §§ 841(a)(1) and 846.

2. Prior to joining the FBI, I was a Child Protective Services Specialist from October 2015 to March 2021. In that capacity, I investigated allegations of child abuse and/or neglect and reported the findings of my investigations to the District Attorney's Office. Through my training and experience, I have become familiar with the methods and operation of drug distributors, including their common organizational structures, use of violence, methods of distributing, storing, and transporting drugs, and methods of collecting and laundering drug proceeds. As part of my investigative experience as an FBI Special Agent, I have been the affiant in multiple Title III wire intercept affidavits, executed search and arrest warrants, conducted physical surveillance, coordinated controlled purchases with confidential sources, analyzed records documenting the purchase and sale of illegal drugs, and spoken with

1

informants and subjects, as well as other local and federal law enforcement officers, regarding the manner in which drug distributors obtain, finance, store, manufacture, transport, and distribute their illegal drugs.

3. The facts set forth below are based upon my own personal observations, reports and information provided to me, the Oklahoma City Police Department (OCPD), or the FBI by other law enforcement agents, and other documents obtained during the course of this investigation. All of the below-described dates, times, and drug and currency amounts are approximate.

4. The information contained in this Affidavit is submitted for the limited purpose of establishing probable cause to search a cellular phone belonging to Antonio Marquez (MARQUEZ). The phone is a white **Apple iPhone, IMEI:** 354820297446125, S/N#: G30CR3L2RL (hereinafter **SUBJECT PHONE**), as further described in **Attachment A**, which is incorporated into this Affidavit by reference. The FBI in Oklahoma City has custody of the **SUBJECT PHONE** in Oklahoma City, Oklahoma. I am submitting this Affidavit in support of a search warrant, which would authorize the forensic examination of the **SUBJECT PHONE** for the purpose of identifying electronically-stored data that is particularly described in **Attachment B**, which constitute instrumentalities, evidence, and fruits of violations of 21 U.S.C. §§ 841(a)(1), 846. The requested warrant would also authorize the seizure of the items and information specified in **Attachment B**. Since this Affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause for the requested warrant.

## PROBABLE CAUSE

5.  In October of 2022, Special Agents and Task Force Officers (TFOs) assigned to the FBI initiated a joint investigation targeting Carlos Villanueva (VILLANUEVA) —whom law enforcement believed to be part of a drug trafficking organization (DTO) that distributed cocaine in the Oklahoma City area. After multiple controlled drug buys and the execution of search warrants, VILLANUEVA was arrested by the FBI in November of 2023. During May 2024, VILLANUEVA and his codefendant, Destin O'Neil, both pled guilty in case CR-23-480-R.

6.  During the VILLANUEVA investigation, agents learned that Luis Hernandez Dominguez (DOMINGUEZ) was an associate of VILLANUEVA and also a potential drug-trafficker. In April of 2024, investigators continued the investigation into DOMINGUEZ's role within the DTO and whether he might be the possible replacement for VILLANUEVA. Not only had DOMINGUEZ replaced VILLANUEVA, but he also now had his own associate/employee –MARQUEZ. During the earliest portions of the investigation into DOMINGUEZ, law enforcement attempted to coordinate a controlled buy of cocaine from DOMINGUEZ. While DOMINGUEZ certainly confirmed that he had cocaine for sale, he would not sell smaller than half kilogram quantities of cocaine. It is rare to conduct controlled purchases in these amounts because a kilogram of cocaine because it is so cost prohibitive – usually $25,000 - $30,000 in Oklahoma. However, DOMINGUEZ informed CS1 that he had someone who worked for him, MARQUEZ, that would break DOMINGUEZ's cocaine down to sell in

smaller quantities and DOMINGUEZ would put CS1 in contact with him.[1]

7. In the first half of April 2024, law enforcement used a confidential human source (CS1)[2] to purchase cocaine from MARQUEZ. CS1 communicated directly with MARQUEZ via telephone number associated with the **SUBJECT PHONE**, and he/she agreed to meet with MARQUEZ in Oklahoma City to exchange ounce quantities of cocaine (roughly $1,000 per ounce) for an agreed upon price. CS1 met with MARQUEZ at the pre-determined meeting location, which was set by MARQUEZ and located near his residence, and exchanged the money for the cocaine.[3] During this controlled buy, MARQUEZ informed CS1 that the drugs he sold came from DOMINGUEZ.

8. During the first half of May 2024, law enforcement used CS1 to conduct a second controlled drug buy of cocaine from MARQUEZ. CS1 contacted MARQUEZ at the telephone number associated with the **SUBJECT PHONE**, and coordinated the purchase of ounce quantities of cocaine for an agreed upon price. At the same time CS1 was coordinating

---

[1] MARQUEZ has verbally confirmed his business relationship with DOMINGUEZ. Agents have conducted extensive surveillance, both physical and electronic, on DOMINGUEZ and MARQUEZ and the two do not appear to have any normal interactions or relationship outside of their roles and involvement in this DTO.

[2] CS1 was not promised anything in exchange for his/her cooperation but has received two monetary payments for his/her services, the most recent payment being in December of 2023. Additionally, CS1 has received immigration benefits in exchange for his/her services. Information provided by CS1 has been reliable to the best of my knowledge, and I am unaware of any false information provided by VS1. Information herein attributed to CS1, unless otherwise noted, was obtained by CS1 through his/her personal observations and conversations with targets of this investigation and their associates.

[3] The substance provided by MARQUEZ field tested positive for cocaine. During the controlled buy, CS1 was equipped with an FBI-issued recording device, and the recording is maintained by the FBI.

4

the deal, investigators established surveillance on MARQUEZ who was away from his residence at that time. Just minutes after the two coordinated the deal, investigators continued surveillance on MARQUEZ and watched him travel back to his residence.

9.  MARQUEZ was inside his residence for approximately eight minutes before returning to his vehicle and departing. After MARQUEZ left his residence, using the phone number associated with the **SUBJECT PHONE**, he sent the location for the controlled drug buy to CS1. Investigators continued surveillance on MARQUEZ and observed him arrive at the meet location. When CS1 arrived at the same location, investigators watched MARQUEZ exit his vehicle, get into CS1's vehicle, and the two completed the cocaine transaction.[4]

10. On May 30, 2024, the FBI and the Oklahoma City Police Department conducted an arrest of Antonio Marquez (MARQUEZ), based on probable cause to believe MARQUEZ was involved in a drug conspiracy. Pursuant to a search warrant authorized by United States Magistrate Judge Amanda Maxfield Green, law enforcement conducted a search warrant at MARQUEZ's residence and seized approximately one kilogram of cocaine, three firearms, and multiple cell phones. Additionally, MARQUEZ gave investigators consent to search his vehicle and they ultimately seized the **SUBJECT PHONE** from that vehicle. Following the seizure of the **SUBJECT PHONE**, investigators confirmed that the **SUBJECT PHONE** belonged to MARQUEZ.

11. MARQUEZ was taken into custody by the FBI and transported to the U.S

---

[4] The substance provided by **MARQUEZ** field tested positive for cocaine. During the controlled buys, CS1 was equipped with an FBI-issued recording device, and the recording is maintained by the FBI.

Federal Courthouse in the Western District of Oklahoma. The **SUBJECT PHONE** was seized by investigators and checked into the Oklahoma City FBI Evidence Control Room.

12. Based upon my training and experience, I am aware that individuals involved in trafficking illegal drugs often use cell phones to maintain contact with other co-conspirators, including suppliers, transporters, distributors, and purchasers of illegal narcotics. Such cell phones and their associated memory cards commonly contain electronically stored information which constitutes evidence, fruits, and instrumentalities of drug trafficking offenses including, but not limited to, the phone directory and/or contacts list, calendar, text messages, e-mail messages, call logs, photographs, and videos.

13. Based on my training and experience, I know that individuals involved in trafficking illegal drugs often take and store photographs of controlled substances and the proceeds of drug sales, and usually take and store these photographs using their cell phones.

14. Based on my training and experience, I know that electronic devices like the **SUBJECT PHONE** can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the electronic device. This information can sometimes be recovered with forensic tools. This is true even if the user of the electronic device deleted the file. This is so because when a person "deletes" a file on a computer or electronic device, the data contained in the file does not actually disappear; rather, the data remains on the storage medium until it is overwritten by new data.

15. Based on the above information, there is probable cause to believe that violations of 21 U.S.C. §§ 841(a)(1) and 846 have occurred, and that evidence, fruits, and instrumentalities of these offenses are located on the **SUBJECT PHONE**. Therefore, I respectfully request that

this Court issue a search warrant for the **SUBJECT PHONE**, described in **Attachment A**, authorizing the seizure of the items described in **Attachment B.**

16. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the **SUBJECT PHONE** consistent with the warrant. The examination may require law enforcement to employ techniques, including but not limited to computer-assisted scans of the entire medium, which might expose many parts of the **SUBJECT PHONE** to human inspection in order to determine whether it is evidence described by the warrant.

17. Because the warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

Based on the foregoing, I respectfully submit that there is probable cause to believe that evidence relating to violations of 21 U.S.C. §§ 841(a) and 846 will be found on the **SUBJECT PHONE**. I therefore respectfully request issuance of a search warrant for the **SUBJECT PHONE** (as set forth in **Attachment A**) based on the above-mentioned facts.

7

FURTHER, YOUR AFFIANT SAYETH NOT.

_____
MARC JONES
SPECIAL AGENT
Federal Bureau of Investigation

Sworn to and subscribed before me this 6th day of June, 2024.

_____
SUZANNE MITCHELL
United States Magistrate Judge

## ATTACHMENT A

The property to be searched is a white APPLE PHONE, IMEI: 354820297446125, S/N#: G30CR3L2RL, the "**Subject Phone**." The **Subject Phone** is currently located at FBI Oklahoma City, 3301 W. Memorial Road, Oklahoma City, Oklahoma. A photo of the **Subject Phone** is below:



## ATTACHMENT B

1. All records on the **Subject Device** described in **Attachment A** that relate to violations of 21 U.S.C. § 841 and 21 U.S.C. § 846 that involves MARQUEZ, and other co-conspirators, from April 1, 2024 through May 30, 2024, including but not limited to:

    a. lists of customers and co-conspirators and related identifying information;

    b. communications and evidence of communications, including but not limited to call logs, voicemails, text messages, multimedia messages, emails, and messages sent through applications, between the user of the **Subject Device** and customers and co-conspirators;

    c. types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

    d. any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

    e. any information recording MARQUEZ's schedule or travel, including but not limited to location information; and

    f. all bank records, checks, credit card bills, account information, and other financial records.

2. Evidence of user attribution showing who used or owned the **Subject Device** at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

3. As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.